**In re Ronald J. MERRIWEATHER, Rhonda Merriweather, Debtors.**

**Bankruptcy No. 93–48107–H5–7.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

July 27, 1995.

Ronald J. Merriweather and Rhonda Merriweather, Houston, TX, pro se.

Amy L. Loose–Mitchell, Houston, TX, for PHH U.S. Mortg.

### ORDER

KAREN KENNEDY BROWN, Bankruptcy Judge.

Before the Court is Debtors' Motion to Correct for Breach of Contract and Breach of 11 U.S.C. § 525 by Creditor PHH U.S. Mortgage Corporation. A hearing was held on May 19, 1995 and Debtors were allowed to file supplementary pleadings in support of their motion. After reviewing the applicable law, the Court concludes that Debtors' Motion to Correct for Breach of Contract and Breach of 11 U.S.C. § 525 by Creditor PHH U.S. Mortgage Corporation should be denied for the following reasons:

### I.

█ Debtors filed a voluntary Chapter 7 bankruptcy petition on October 28, 1993. On February 1, 1994, debtors applied for refinancing of their residence at 11819 Bourgeois Forest Rd., Houston, Texas 77066 through PHH U.S. Mortgage Corporation (PHH), the original lienholder on debtors' residence. On that date, debtors allege that PHH made an oral contract to refinance their mortgage of $200,000 at 7.375% interest with a mortgage of $228,000 at 7.00% interest, thereby allowing the debtors to roll their second mortgage into their first at a lower interest rate. PHH verbally informed the debtors on February 8, 1994, that their application for refinancing had been denied due to debtors' Chapter 7 bankruptcy proceeding. Written confirmation of the denial was received by the debtors on or about April 9, 1994. Debtors now assert that PHH breached an oral contract to refinance debtors' residence when PHH denied debtors' refinancing application.

However, even assuming all debtors' allegations to be true, any such contract must meet the requirements of the Texas Business and Commerce Code, Section 26.02(b), which states:

> A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

TEX.BUS. & COM.CODE ANN. § 26.02(b) (Vernon Supp.1995).

"Loan agreement" is defined in Section 26.02(a)(2) as:

> [O]ne or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

TEX.BUS. & COM.CODE ANN. § 26.02(a)(2) (Vernon Supp.1995).

It is undisputed that PHH is a "lender approved by the United States Secretary of Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act." TEX.BUS. & COM.CODE ANN. § 26.02(a)(1) (Vernon Supp. 1995).

Therefore, since PHH is a "financial institution" and the alleged oral contract is a "loan agreement" as contemplated by the statute, and the loan agreement was for an amount over $50,000, the alleged oral contract is unenforceable because it was not in writing and signed by the party to be bound or that party's authorized representative.

### II.

█ Second, debtors allege that PHH U.S. Mortgage Corporation (PHH) violated 11 U.S.C. § 525 by discriminating against debtors in refusing to refinance the debtors' residence at 11819 Bourgeois Forest Rd., Houston, Texas 77066 solely because of debtors' Chapter 7 bankruptcy proceeding.

Section 525(a) does not apply to the case at bar because PHH is not a "governmental unit" as contemplated by the statute. "Gov-

ernmental unit" is defined in 11 U.S.C. § 101(27) as:

United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27) (1993). In addition, the legislative history behind the definition of governmental unit states:

"Department, agency, or instrumentality" does not include an entity that owes its existence to State action, such as the granting of a charter or license but that has no other connection with a State or a local government or the Federal Government. The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function.

S.REP. No. 989, 95th Cong., 2d Sess. 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810.

It is undisputed that PHH is a private corporation that originates, funds, and services mortgages for profit, and not a "governmental unit" as contemplated by the statutes. Therefore, section 525(a) does not apply to the case at bar.

■ Section 525(b) also does not apply primarily because debtors are not employees of PHH. Section 525(b) states:

No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of the case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b) (1993).

Courts typically apply section 525(b) to private employers when the discrimination relates to the debtor's employment with the entity taking the action. *See In re Hicks,* 65 B.R. 980, 983–984 (Bankr.W.D.Ark.1986) (holding employer bank violated section 525(b) when it transferred debtor from a position as a teller to a position in the bookkeeping department that did not involve the handling of cash transactions solely because of a notice of debtor's bankruptcy in the local newspaper); *In re Vaughter,* 109 B.R. 229, 237 (Bankr.W.D.Tex.1989) (holding employer phone company violated section 525(b) when debtor account specialist was not offered participation in the commission advancement program because of debtor's bankruptcy when all other account specialists were offered participation).

Courts are also willing to read beyond the plain language of section 525(b) and apply the statute to instances of discrimination by a credit union where the credit union is closely affiliated with the debtor's employer. *In re Patterson,* 125 B.R. 40, 53–54 (Bankr. N.D.Ala.1990), *aff'd,* 967 F.2d 505, 514 (11th Cir.1992).

The case at bar, however, is distinguishable from *Patterson.* In *Patterson,* the debtors were denied access to all services of their credit union, their accounts were frozen, their deposits were refused, and their checks were returned unpaid. *Patterson,* 125 B.R. at 43. In the case at bar, the debtors were denied refinancing on one loan application, not the complete services of the credit union. More importantly, the refinancing application was not rejected by the debtors' credit union but by a third party, PHH.

Debtors cite *In re Brown,* 95 B.R. 35 (Bankr.E.D.Va.1989), *vacated in part,* 1989 WL 513591 (Bankr.E.D.Va.1989) (vacating portion of the Order enjoining Newport News Educators' Credit Union from use or enjoyment of any policy which in any manner discriminates against members solely on the grounds of having filed bankruptcy, pending

Motion for Reconsideration of the Order) for the proposition that section 525(b) applies to instances of discrimination by a credit union where the credit union is closely affiliated with the debtor's employee; however, debtors' reliance is misplaced. Although the court in *Brown* held that "to deny access to *all* credit union services clearly does 'discriminate with respect to employment,'" the court's holding was based on section 525(a) because the debtor was employed by the Newport News Public Schools, a governmental unit. *Brown,* 95 B.R. at 37 (quoting § 525(a)).

Debtors urge this Court to find that PHH and the debtors' credit union are one entity based on the fact that the debtors' credit union refers all prospective mortgagors to PHH. Nevertheless, this Court concludes that this referral process does not provide a significant nexus between PHH and debtors' credit union to hold that PHH and the debtors' credit union are one entity for the purposes of section 525(b).

 Debtors' final argument, citing *In re Briggs,* 143 B.R. 438 (Bankr.E.D.Mich.1992), is that section 525(b) applies to any private employer and is not limited to the employers of the debtor. *Briggs,* however, does not stand for the proposition that section 525(b) applies to any private employer. In fact, the court stated:

> Because § 525(b) would otherwise require absurd distinctions along the lines discussed, I conclude that an action can constitute a violation of § 525(b) *only if it relates to the debtor's employment with the entity taking the action.*

*Briggs,* 143 B.R. at 444–445 (emphasis added). This Court also limits section 525(b) to debtor's own employer.

For the above stated reasons, Debtors' Motion to Correct for Breach of Contract and Breach of 11 U.S.C. § 525 by Creditor PHH U.S. Mortgage Corporation is **DENIED.**